# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | |
|---|---|
| SHAWN T. SALES, | ) |
| | ) |
|       Petitioner, | ) |
| | ) |
| v. | )    5:05-cv-02094-WMA-JEO |
| | ) |
| WARDEN KENNETH JONES | ) |
| and BILL PRYOR, THE ATTORNEY | ) |
| GENERAL OF THE STATE OF | ) |
| ALABAMA, | ) |
| | ) |
|       Respondents. | ) |

## MEMORANDUM OPINION

The petitioner, Shawn T. Sales, filed a petition for writ of habeas corpus with this court on October 5, 2005. (Petition at 1).[1] He challenges the validity of his 2003 conviction on the charge of felony murder received in the Circuit Court of Madison County, Alabama. Upon consideration of the same, the court finds that the petition is due to be denied.

## PROCEDURAL HISTORY

The petitioner was indicted in the April 2001 term of the Madison County Grand Jury on the charge of capital murder during a robbery in violation of Section 13A-5-40(a)(2) of the Alabama Criminal Code. (Ex. A at C. 6-7).[2] Following a jury trial, the jury found the petitioner guilty of the lesser included offense of felony murder. *Id*. at 3, 6; R. 1110-11.[3] He was sentenced to a term of life on April 17, 2003. He filed a timely notice of appeal.

---

[1] The petition is located at document 1 in the record.

[2] References herein to "Ex. ____" are to the exhibits attached to the answer (hereinafter "Answer") of the respondents, which is found at document 6.

[3] References herein to "R. at ____" are to the trial transcript found at document 6.

The petitioner's conviction and sentence were affirmed on appeal in an unpublished memorandum opinion. (Ex. D). His application for rehearing was overruled, as was his application for certiorari. (Ex. F & H). A certificate of judgment was issued on August 13, 2004. (Ex. I).

The petitioner did not file a post-conviction challenge pursuant to Rule 32 of the Alabama Rules of Criminal Procedure. Instead, the petitioner filed the present petition alleging the same grounds that he raised in his direct appeal: (1) the trial court erred in failing to allow him to present evidence that Carl Maurice Cantrell committed the offense with which the petitioner was charged; (2) the trial court erred in failing to allow him to present evidence that the District Attorney's Office had a practice in capital murder cases of denying that it had reached a deal with a testifying witness in exchange for leniency or consideration after the witness had testified; and, (3) the trial court erred in refusing to treat Ramon White as an accomplice, or to allow the jury to make that determination. (Petition at Attachment 4-7). This court entered an order requiring the respondents to appear and show cause why the requested relief should not be granted. (Doc. 4). An answer was filed wherein the respondents assert that the petitioner's claims involve matters of state law or are procedurally barred from review by this court. (Answer). The petitioner filed a response disputing the respondents' assertion that the petition is due to be denied. (Reply).[4]

## OFFENSE CONDUCT

The Alabama Court of Criminal Appeals summarized the relevant evidence from the petitioner's trial as follows:

> The State presented evidence that, on November 18, 1997, the victim,

---

[4] The reply is located at document 8.

2

Richard Kelly, was a cab driver with AAA Cab Company; that, around 8:31 a.m., Jackie Tipton, a dispatcher at AAA Cab Company, received a telephone call from Kennemer Shopping Center requesting a cab to Winchester; that the caller sounded like a black male; the victim was dispatched to Kennemer Shopping Center; that the victim subsequently notified Tipton that he was going to Winchester; that, around 9:00 a.m., John Cody Williams found the victim's body in the middle of Juniper Drive; that Kelly had multiple gunshot wounds; that Kelly's cab was missing; that law enforcement officers subsequently found the cab parked in a nearby subdivision; and that law enforcement officers found a dry vodka bottle underneath the front seat of the cab. The State also presented evidence that the part of the road where the victim was found was narrow; that there were not any tire marks or scuff marks on the victim's clothing or body; that the nine millimeter shell casings law enforcement officers found in the road did not appear to have been run over by a vehicle; and that law enforcement officers did not find any tire marks on either side of the road in the area where the victim's body was found. Finally, the State presented evidence that Kelly died from multiple gunshot wounds.

Ida Sales Lewis, the appellant's great-aunt, testified that she lived across the street from Kennemer Shopping Center; that the appellant was at her apartment on the morning of November 18, 1997; that, sometime after 8:00 a.m., she heard the front door slam and went to look out the window; that she saw the appellant walk across the parking lot at the shopping center; and that she saw him flag down a blue cab that she believed was an AAA cab. She also testified that many homeless people hung out at the shopping center; that they would catch cabs from the shopping center; and that cabs were often at the shopping center in the mornings to pick up people.

Ramon White testified that on November 17, 2003, the appellant told him he had "got into it with the Lumary Boys" and asked him about a gun; that, at that time, a woman approached him and wanted to sell him a nine millimeter gun; that he gave the woman some crack cocaine for the gun; that the woman gave the gun to the appellant; that the appellant subsequently left; that the appellant had tried to telephone him the next morning, but he was asleep; that he saw the appellant later that evening; that he asked the appellant if he had killed the cab driver; that the appellant told him that he did not mean to kill him, that it had happened on Juniper Drive, and that he had driven the vehicle away, hidden it, and wiped it down for fingerprints; that the appellant had about $180 that day and that the money was in one wad; that the appellant told him where the gun was located; and that he did not go and get the gun.  (R. 609.)

Investigator Wayne Sharp with the Huntsville Police Department testified that John Cody Williams was the person who found the victim and telephoned

3

911; that Williams told him that, as he was driving up Juniper Drive, a vehicle coming downhill almost ran him off of the road; that Williams told him that it was an early 60's model, big, dark-colored, oxidized vehicle; that Williams believed that the vehicle was dark green or black; that Williams said that the driver was a white male who was between fifty and sixty years old and who had gray hair, a thin face, and possibly a beard; that, when he asked Williams if the vehicle was a cab, he said he did not think so and that he had not noticed any lights on top of the vehicle or any lettering on the door of the vehicle; that, when Williams drove on up the hill, he saw the victim lying in the road; and that Williams was extremely upset, nervous, almost to the point of tears, and rambling.  He also testified that he subsequently found out that an elderly white male had used a telephone at a laundromat in Kennemer Shopping Center to make a telephone call that morning; that Carl Maurice Cantrell was the person who had used the telephone; that he went to the Huntsville Rescue Mission and talked to Cantrell and Bobby Emerson; and that Bobby Emerson told him that Cantrell had telephoned him around 8:40 a.m. and that he had picked Cantrell up about five minutes later.

      John Cody Williams testified that, around 9:00 a.m., he was driving up Juniper Drive; that, all of a sudden, he saw a vehicle coming toward him; that a white male who was in his fifties or sixties and who had a gray beard was driving the vehicle; that the only thing he was sure about the vehicle was that it had a chrome grill; that he did not see any lights on top of the vehicle or that the vehicle was a cab; that, when he went around the corner, he saw a body flopping around in the middle of the road; that he asked the victim who had shot him and about the vehicle; that the victim just kept saying he had been shot; and that he went to a convenience store and had the clerk telephone 911.

      Bobby Emerson testified that, on November 18, 1997, he was working as a driver at the Huntsville Rescue Mission; that the director of the mission told him to go to the laundromat at Kennemer Shopping Center and pick up Cantrell; and that he picked Cantrell up in front of the laundromat around 10:00 a.m.  He also testified that Cantrell often stayed in missions and at the Salvation Army; that Cantrell also stayed on the streets and had campsites at various places; that Cantrell had a drinking problem; and the he had heard either that Cantrell drank vodka from time to time or that he drank vodka a lot.

(Ex. D at 1-4).

## DISCUSSION

The respondents assert that the petitioner's claims involve matters of state law only. They assert, therefore, that these issues are not reviewable by this court unless the claim

implicates a federal constitutional issue.  They cite to *Pulley v. Harris*, 465 U.S. 37, 41, 102 S. Ct. 1518, 71 L. Ed. 2d 725 (1984) and *Carrizales v. Wainwright*, 699 F.2d 1053, 1054 (11th Cir. 1983).  *See also Hays v. Alabama*, 85 F.3d 1492, 1500 (11th Cir. 1996); *Machin v. Wainwright*, 758 F.2d 1431, 1433 (11th Cir. 1985).

In examining this defense, the court must begin with the premise that Supreme Court law is clear, "We have stated many times that 'federal habeas corpus relief does not lie for errors of state law.' *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S. Ct. 3092, 3102, 111 L. Ed. 2d 606 (1990); *see also Pulley*, 465 U.S. at 37, 41, 104 S. Ct. 871, 874-75, 79 L. Ed. 2d 29 (1984)." *Estelle v. McGuire*, 502 U.S. 62, 67, 112 S. Ct. 475, 480, 116 L. Ed. 2d 385 (1991).  "A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved.  *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. 1981)." *Carrizales*, 699 F.2d at 1055.  In short, the petitioner must demonstrate a constitutional infirmity resulting in fundamental unfairness.  *See Estelle*, 502 U.S. at 70 (citing *Spencer v. Texas*, 385 U.S. 554, 563-64, 87 S. Ct. 648, 653-54, 17 L. Ed. 2d 606 (1967) ("Cases in this Court have long proceeded on the premise that the Due Process Clause guarantees the fundamental elements of fairness in a criminal trial. . . .")); *Pulley*, 465 U.S. at 41 (state law claim must be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment); *Carrizales*, 699 F.2d at 1055 ("A defective jury charge raises an issue of constitutional dimension only if it renders the entire trial fundamentally unfair.").

In his first claim, the petitioner asserts that the trial court erred in refusing to allow him to present evidence that Carl Maurice Cantrell committed the charged offense.  Specifically, he

asserts that the evidence at trial connected Cantrell to the offense. Included in this evidence was the vodka bottle found in the taxi, the description of a person seen driving away from the scene shortly after the shooting, and the fact that Cantrell was seen at the laundromat at the shopping center about the time the victim's cab was dispatched. (Petition at Attachment at 4). Accordingly, the petitioner asserts that the trial court should have allowed the testimony concerning Cantrell's prior intoxication arrests and possession of vodka bottles during two of his earlier alcohol related arrests. *Id.* at 5. The respondents retort that this claim does not provide a basis for federal habeas corpus relief because it simply involves a state evidentiary ruling. (Response at 8).

The court finds that this claim does not involve a federal constitutional claim. This is a state evidentiary issue that was decided adversely to the petitioner by the trial court and the Alabama Court of Criminal Appeals. Nothing demonstrates a constitutional infirmity resulting in fundamental unfairness. *Estelle*, 502 U.S. at 70 (citing *Spencer*, 385 U.S. at 563-64); *Pulley*, 465 U.S. at 41; *Carrizales*, 699 F.2d at 1055.

Even were this court to conclude that the petitioner's challenge amounted to a constitutional claim, he is still not entitled to any relief. 28 U.S.C. § 2254(d) provides a deferential standard for reviewing state court adjudications. *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). Subsection (d) provides:

> (d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as

> determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This court is prohibited "from granting habeas relief for claims previously adjudicated by state courts, unless the state court adjudication was contrary to or represented an unreasonable application of 'clearly established' federal law at the relevant time as determined by the Supreme Court of the United States" or was an unreasonable determination of the facts in view of the evidence presented in the State court. In *Williams*, the Supreme Court stated the standard as follows:

> . . . § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied--the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Williams*, 529 U.S. at 412-14; *see also Parker v. Head*, 244 F.3d 831, 835 (11th Cir.), *cert. denied*, 534 U.S. 1046, 122 S. Ct. 627, 151 L. Ed. 2d 548 (2001).

Relief under the second section of § 2254 is not permitted unless the state court's decision was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. 28 U.S.C. § 2254(d)(2). Additionally, factual

determinations made by the state court are presumed to be correct unless the petitioner rebuts the presumption by clear and convincing evidence. Specifically, AEDPA provides:

> (e)(1) In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).

The respondents are correct in that the Alabama Court of Criminal Appeals adjudicated this issue on the merits and concluded that the petitioner was entitled to no relief. This court can grant relief only if the foregoing standard has been met. The court finds that it has not been met.

The Court of Criminal Appeals specifically found as follows concerning this claim:

> . . . . Evidence that Cantrell had previously possessed vodka bottles and the details about his previous arrests for alcohol related offenses did not relate to the res gestae of the present offense; did not exclude the appellant as the perpetrator of the offense; and would not necessarily have been admissible if Cantrell had been on trial. Therefore, the trial court properly excluded the evidence.
>
> Moreover, the trial court allowed the appellant to present substantial evidence to show that Cantrell had committed the offense. It also allowed the appellant to elicit testimony that Cantrell had had "several drinking charges," minor theft charges, a carrying a concealed weapon charge, and a bad check charge; that Cantrell had a drinking problem; and that Emerson had heard about Cantrell drinking vodka. (R. 728.) Therefore, error, if any, in the trial court's refusal to admit evidence about Cantrell' previous possession of vodka bottles and about the details concerning his previous alcohol related arrests was harmless. *See* Rule 45, Ala. R. App. P.
>
> The appellant also appears to argue that the trial court erroneously refused to allow him to admit into evidence photographs of Cantrell that were included in Cantrell's criminal records. However, the trial court did not rule on the admissibility of the photographs during the pretrial hearing on this issue. Subsequently, the trial court admitted into evidence a photograph of Cantrell. Because the appellant did not receive an adverse ruling regarding the admission of

>the photographs, his argument is not properly before this court. *See Woods v. State*, 790 So. 2d 1014 (Ala. Crim. App. 2000).

(Ex. D at 6-7).[5] Nothing before this court demonstrates that the determination of the Court of Criminal Appeals was contrary to clearly established Federal law as determined by the Supreme Court of the United States or involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

The petitioner next asserts that the trial court erred in refusing to allow him to present evidence that the prosecutor's office had a practice in capital murder cases of denying that it had made a deal with a testifying witness in exchange for leniency or consideration after the witness had testified. Because this claim was presented in the state courts and could potentially involve a constitutional deprivation, the undersigned finds it arguably is subject to review in this proceeding.

The Alabama Court of Criminal Appeals specifically addressed the petitioner's challenge. It found as follows:

>In this case, the appellant thoroughly cross examined Ramon White regarding whether he had made any deals in exchange for his testimony. However, the appellant wanted to present the testimony of an assistant district attorney and a criminal defense attorney that the State had, in unrelated trials, asserted at trial that it had not made a deal with a particular witness and then, after that trial had concluded, given that witness favorable treatment. The appellant was not attempting to introduce this evidence to prove that a deal actually existed between the State and White at the time of his trial. Rather, he was trying to imply that the State might, at some point in the future, take favorable action on White's behalf. Because the evidence was purely speculative, it was not relevant. *See* Rule 401, Ala. R. Evid. Therefore, the trial court properly excluded the testimony.

---

[5]The reference to the photographs is included for completeness. The petitioner does not raise this challenge in the present proceeding.

(Ex. D at 7-8). Nothing in this record demonstrates that the decision was contrary to clearly established Federal law as determined by the Supreme Court of the United States or that the determination involved an unreasonable application of clearly established Federal law as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d). The petitioner is not entitled to any further review or relief.

Lastly, the petitioner asserts that the trial court erred in refusing to threat Ramon White as an accomplice and in failing to require the jury to make that determination. (Petition at Attachment at 7). According to the petitioner, had the court correctly proceeded, the prosecution would have been required to produce independent evidence showing that he was guilty of the charged offense. *Id*. The respondents retort that this claim is barred from review because it was procedurally defaulted in the state courts. (Response at 13).

Before proceeding with any discussion of the merits, the court always must address whether any procedural bars prevent a review of the same. The respondents assert that the petitioner's claims are procedurally barred from review. (Doc. 10 at p. 8). He retorts that the cause of the default is ineffective assistance of counsel.

A federal court's authority to review state court criminal convictions is severely restricted when a petitioner has failed to present the claim in state court or when he fails to follow the applicable state procedural rules. *Teague v. Lane*, 489 U.S. 288, 297-98, 109 S. Ct. 1060, 103 L. Ed. 2d 334 (1989); *Johnson v. Singletary*, 928 F.2d 1166, 1173 (11th Cir. 1991), *cert. denied*, 506 U.S. 930 (1992). Where the petitioner fails to present the claim in state court, he is barred from raising it in federal court unless he can show cause for the default and prejudice resulting therefrom. *Teague*, 489 U.S. at 298. Where the claim is presented in state court and the last state

court to review it states "clearly and expressly" that its judgment rests on a procedural bar, and the bar presents an independent and adequate state ground for denying relief, federal courts may not review the claim. *Harris v. Reed*, 489 U.S. 255, 263, 109 S. Ct. 1038, 103 L. Ed. 2d 308 (1989); *Baldwin v. Johnson*, 152 F.3d 1304, 1314 (11th Cir. 1998); *Hill v. Jones*, 81 F.3d 1015, 1022 (11th Cir. 1996), *cert. denied*, 519 U.S. 1119 (1997). In *O'Sullivan v. Boerckel*, 526 U.S. 838, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999), the Supreme Court stated that federal habeas corpus petitioners need only provide the "state courts a fair opportunity to act on their claims." *Id.* The Court further held that in order to satisfy the exhaustion requirement for bringing a habeas corpus petition, the petitioner was required to present his claims to the state supreme court for discretionary review when that review is part of the ordinary review procedure in the State. *Id*. at 848.

There are only two exceptions that allow this court to review the merits of a claim that has been procedurally defaulted. First, the petitioner must demonstrate both cause excusing the default and actual prejudice resulting from the bar. Second, in extraordinary cases, a federal court may grant the writ without a showing of cause and prejudice to correct "a fundamental miscarriage of justice." *Hill*, 81 F.3d at 1023. Under the latter exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Hill*, 81 F.3d at 1023, citing *Murray v. Carrier*, 477 U.S. 478, 496, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986).

In reviewing this claim, the Alabama Court of Criminal Appeals stated that the petitioner did not request that the trial court instruct the jury on accomplice testimony nor did he object when the trial court did not give such an instruction. (Ex. D at 8). Therefore, the court

concluded that he did not preserve the issue for appellate review. *Id*. Accordingly, this claim is barred from further review by this court. The petitioner has demonstrated neither cause and prejudice or actual innocence to allow additional review.

Even if this court were to address the merits of the claim, it would find that the petitioner is entitled to no relief. The Alabama Court of Criminal Appeals correctly concluded that White was not an accomplice in the robbery-murder. It stated:

> . . . . The evidence was undisputed that the appellant told White that he had "got [sic] into it with the Lumary Boys"; that White gave the gun to the appellant for protection; and that the appellant did not tell White about the shooting until after it had happened. . . . Therefore, the trial court correctly found, as a matter of law, that White was not an accomplice. Accordingly, his argument is also without merit.

(Ex. D at 9). The petitioner is entitled to no relief as this court cannot find that the decision of the Court of Criminal Appeals was contrary to clearly established Federal law, as determined by the Supreme Court of the United States or that the determination involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States. 28 U.S.C. § 2254(d).

## CONCLUSION

In view of the foregoing, the court finds that the petition for a writ of habeas corpus is due to be denied and dismissed with prejudice. An appropriate order will be entered.

**DONE** this the 3rd day of July, 2007.

_____
WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE